UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:26-cv-04091-MWC-SP                               Date: April 23, 2026

Title:    Isaac Antonio Villegas Molina v. Markwayne Mullin *et al.*

Present:  The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:  (IN CHAMBERS) ORDER GRANTING PETITIONER'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER (DKT. 11)**

Before the Court is Petitioner Isaac Antonio Villegas Molina's ("Petitioner") *ex parte* application ("Application") seeking a temporary restraining order ("TRO") enjoining Respondents[1] from transferring Petitioner's removal proceedings to the "detained docket," mandating Respondents to immediately release Petitioner from custody under the terms of his 2025 Immigration Court bond, and enjoining Respondents from re-detaining Petitioner absent notice, a showing of a material change in circumstances, and a pre-deprivation hearing before a neutral adjudicator. *See* Dkt. # 11 ("*Appl.*").  Respondents filed a response stating that "after reviewing Petitioner's application for a temporary restraining order and considering the available information, [they] have determined not to present an opposition argument at this time."  *See* Dkt. # 18 ("*Response*").

The Court issued a standing order on April 20, 2026, enjoining Petitioner's removal from the District pending further orders from the Court and setting a briefing schedule on Petitioner's Application.  *See* Dkt. # 13.

For the reasons set forth below, the Court **GRANTS** the Application.

---

[1] The Application lists Respondents as: Markwayne Mullin (Secretary of the Department of Homeland Security ("DHS")); Todd Lyons (Acting Director of U.S. Immigration and Customs Enforcement ("ICE")); Todd Blanche (Acting Attorney General of the United States); and Andre Quinones (Director of the Los Angeles ICE Field Office).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:26-cv-04091-MWC-SP                        Date: April 23, 2026

Title:     Isaac Antonio Villegas Molina v. Markwayne Mullin *et al.*


I.      Background

Petitioner is a native and citizen of Panama.  *See Appl.* at 2.  He arrived in the United States on a nonimmigrant visa in 2012 and has resided in the United States since.  *See id.* Immigration officers initially detained Petitioner on June 18, 2025, as part of "Operation at Large," a largescale immigration operation in Southern California.  *See id.*  Three individuals—Petitioner, Pedro Vasquez Perdomo, and Carlos Osorto—filed a petition for writ of habeas corpus challenging their detention and arrest.  *See Vasquez Perdomo v. Noem*, 2:25-cv-05605-MEMF-SP (C.D. Cal.).

Immigration officials placed Petitioner in removal proceedings, but an Immigration Judge allowed his release on a $5,000 bond as of July 7, 2025.  *See Appl.* at 3.  Petitioner has reported regularly to the Intensive Supervision Appearance Program ("ISAP") for more than nine months.  *See id.*  On April 16, 2026, immigration authorities detained Petitioner at his regular ISAP appointment.  *See id.*  Petitioner asserts that immigration officials provided no reason for his re-detention.  *See id.*  Petitioner has been at the Adelanto Immigration Detention Center since his re-detention.  *See id.*

Petitioner has a pending motion to terminate removal proceedings before an Immigration Judge.  *See id.*  The motion challenges Petitioner's June 18, 2025, detention as unlawful, and a decision from the Immigration Judge is scheduled for April 24, 2026. *See id.*  The Immigration Judge has already ordered that Petitioner need not appear at the hearing.  *See id.*  After Petitioner's April 16, 2026, detention, Petitioner immediately filed a petition for writ of habeas corpus.  *See* Dkt. # 1.  On April 19, 2026, DHS filed a Form I-830 notice in the Immigration Court to unilaterally change venue from the current "nondetained docket" to the Adelanto "detained docket."  *See* Dkt. # 11-1, Ex. 10. Executive Office of Immigration Review ("EOIR") policy as of May 2025 allows for DHS to unilaterally change venue upon detention without consent of an Immigration Judge.  *See* Dkt. # 7 ¶ 4.  Petitioner maintains that "[c]hanging venue to Adelanto would provide a more favorable forum for DHS in order to avoid a potentially unfavorable outcome in the pending motion to terminate."  *See Appl.* at 4.

When filing their "Response," Respondents argue that they detained Petitioner "because of his prior violations of the [Alternatives to Detention ("ATD")] Program, which he was required to follow as part of the conditions of his immigration bond release."  *See Response* at 2.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:26-cv-04091-MWC-SP                          Date: April 23, 2026

Title:    Isaac Antonio Villegas Molina v. Markwayne Mullin *et al.*


II.     <u>Legal Standard</u>

    A.     <u>*Ex Parte* Applications</u>

"Circumstances justifying the issuance of an ex parte order are extremely limited." *Reno v. Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)).  "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO."  *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

In this District, *ex parte* applications are solely for extraordinary relief and are rarely justified.  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995).  A party filing an *ex parte* application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect."  *Id.* at 492.  "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have."  *Id.* at 493 (internal quotation marks omitted).

    B.     <u>Temporary Restraining Orders</u>

Federal Rule of Civil Procedure ("Rule") 65 grants district courts the power to issue injunctions and restraining orders.  Issuance of a TRO, as a form of preliminary injunctive relief, is an extraordinary remedy, and the applicant for such a remedy bears the burden of proving its propriety.  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  In general, the showing required for a TRO and a preliminary injunction are the same.  *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  The applicant for a TRO must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024).  "In the Ninth Circuit, a plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'"  *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)).  Where the non-movant is a government entity, "the third and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:26-cv-04091-MWC-SP                    Date: April 23, 2026

Title:     Isaac Antonio Villegas Molina v. Markwayne Mullin *et al.*

fourth [*Winter*] factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

III.    Discussion

    A.    *Ex Parte* Application and *Mission Power* Factors

Petitioner has satisfied the *Mission Power* factors.  Petitioner has been in immigration proceedings since June 18, 2025.  Days before the Immigration Judge was to issue a decision on Petitioner's motion to terminate those proceedings, Respondents re-detained Petitioner and unilaterally transferred his removal proceedings to a different immigration docket.  If the Court heard the Application according to regularly noticed motion procedures, the April 24, 2026, date for the Immigration Judge's decision would pass without Petitioner receiving a decision.  And Petitioner filed for *ex parte* relief as soon as he learned of his case's transfer.  Because Petitioner contends that the transfer of his case would potentially lead to a less favorable outcome, he has shown that his case would suffer irreparable prejudice if the Court heard it according to regularly noticed motion procedures.  Since Respondents do not contest Petitioner's release—suggesting that his re-detention may have been unwarranted—the crisis requiring *ex parte* relief was of Respondents' making, not Petitioner's.  Thus, *ex parte* relief is appropriate.

    B.    Likelihood of Success on the Merits

Petitioner has demonstrated a likelihood of success on the merits of his request for release from detention.  He argues that immigration authorities deprived him of the procedural protections that the Due Process Clause of the Constitution requires.  *See Appl.* at 5–10.  "Given that due process interests are at stake, we look to the test outlined in" *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160 (9th Cir. 2004).  There, the Supreme Court discussed the need to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:26-cv-04091-MWC-SP                                        Date: April 23, 2026

Title:       Isaac Antonio Villegas Molina v. Markwayne Mullin *et al.*


*Mathews*, 424 U.S. at 335.

Regarding the first factor, Petitioner has a reliance interest on the "implied promise" that immigration authorities would not revoke his liberty, and there is at least a serious question going to the merits of whether that reliance was justifiable since he contends that he complied with all ISAP requirements. *Cf. Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025).  Petitioner also contends that his detention—and the subsequent transfer of his case—hampers his ability to prevail in his motion to terminate removal proceedings. Once a noncitizen is present in the United States, they have a "weighty" liberty interest in remaining in the United States, as they stand to lose rights to "stay and live and work" in the country and "to rejoin [their] immediate family." *See Landon v. Plascencia*, 459 U.S. 21, 34 (1982) (internal quotation marks and citations omitted).  Accordingly, Petitioner's private interest is significant.

As to the second *Mathews* factor, Petitioner notes that he received no pre-deprivation process.  *See Appl.* at 7, 9.  "The absence of pre-deprivation procedures creates a high risk of erroneous liberty deprivation." *Gomez Romero v. Wamsley*, No. C25-2207-JHC-MLP, 2025 WL 3628633, at *1 (W.D. Wash. Dec. 8, 2025).  For that reason, the second *Mathews* factor counsels in favor of granting the Application.

Still, the Court must consider the government's interests.  Though the government has an interest in the steady enforcement of its immigration laws, the government's interest in detaining Petitioner without any procedural protections is slight. *See Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *6 (E.D. Cal. Jan. 5, 2026) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)).  Moreover, custody hearings for immigration detention are routine and impose a "minimal" cost on the government. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).  And Respondents do not oppose Petitioner's request for release, minimizing the government interest here. *See generally Response*.  Thus, the third *Mathews* factor counsels in favor of granting the Application.

Even if Respondents could now provide a post-deprivation bond hearing, the Court must heed the language in *Mathews* that "[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing." *See* 424 U.S. at 331.  Given the severe delay that comes with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:26-cv-04091-MWC-SP                                      Date: April 23, 2026

Title:      Isaac Antonio Villegas Molina v. Markwayne Mullin *et al.*

receipt of post-deprivation bond hearings, and since the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities," *see Hernandez v. Sessions*, 872 F.3d 976, 995 (2017), a post-deprivation bond hearing cannot undo those harms.  And time in detention causes people to lose jobs that they may not be able to recover.  The argument that a post-deprivation hearing would provide full relief assumes that one can recover everything that comes with being free from detention, a dubious proposition.

For these reasons, Petitioner has shown a likelihood of success on the merits of the Application.

C.      Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "Moreover, the Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention,' including 'subpar medical and psychiatric care in ICE detention facilities.'"  *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *6 (C.D. Cal. Aug. 28, 2025) (quoting *Hernandez*, 872 F.3d at 999).  Since denying Petitioner's Application would continue to deprive him of liberty without due process and subject him to the subpar conditions of ICE detention, this factor weighs in favor of granting the Application.

D.      Balance of Equities and Public Interest

As detailed above, the last two *Winter* factors "merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  As to Respondents' interests, there is a compelling interest in the enforcement of the nation's immigration laws.  *See Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1252 (W.D. Wash. 2018).  Still, the balance of equities and the public interest factors tip in favor of Petitioner because he is challenging Respondents' violation of federal law.  *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citations omitted)); *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030590, at *9 (C.D. Cal. Sept. 12, 2025); *Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *10 (C.D. Cal. Dec. 11, 2025) ("'Public interest concerns are implicated when

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:26-cv-04091-MWC-SP                          Date: April 23, 2026

Title:     Isaac Antonio Villegas Molina v. Markwayne Mullin *et al.*


a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.'" (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005))); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (noting that the government "cannot suffer harm from an injunction that merely ends an unlawful practice").  And Respondents' lack of opposition to Petitioner's request minimizes the weight of their interests.

Accordingly, and considering the other factors that the Court has already examined, the Court must grant the Application.

IV.     Bond Requirement

Rule 65 notes that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'"  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original)).  "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Id.* (cleaned up).  "That is, the mandatory language of Rule 65(c) does not 'absolve[] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond.'"  *Vaskanyan v. Janecka*, No. 5:25-cv-01475-MRA-AS, 2025 WL 2014208, at *8 (C.D. Cal. June 25, 2025) (quoting *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003)).

Since the Court is ordering Respondents to follow the governing law, bond is unnecessary.  *See Swan v. Tanjuakio*, No. 21-00052 JMS-KJM, 2021 WL 1794756, at *8 (D. Haw. May 5, 2021) ("The court is simply requiring [defendant] to follow the law.  No bond is required." (footnote omitted)); *Hassanzadeh v. Warden*, No. ED CV 25-2113-DMG (MAAx), 2025 WL 3306272, at *6 (C.D. Cal. Nov. 25, 2025) (ruling that bond was unnecessary where the court ordered respondents to release immigration detainee from custody and follow the governing law).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:26-cv-04091-MWC-SP                    Date: April 23, 2026

Title:     Isaac Antonio Villegas Molina v. Markwayne Mullin *et al.*

V.      Conclusion

For the foregoing reasons, the Court **GRANTS** the Application and **ORDERS** as follows:

1.  Respondents must release Petitioner immediately under the same terms applicable to him prior to his April 16, 2026, detention.
2.  Because Petitioner will no longer be detained, Respondents must return Petitioner's removal proceedings to the "nondetained docket."
3.  When releasing Petitioner, Respondents must return any property seized from him in the course of his arrest and detention.
4.  Respondents are enjoined from re-detaining Petitioner without providing notice and a pre-deprivation hearing before a neutral adjudicator.
5.  Respondents are enjoined from transferring Petitioner outside of the Central District of California pending final resolution of his case.

The Court further **ORDERS** Respondents to show cause, in writing, no later than seven days after this Order as to why a preliminary injunction should not issue.  Petitioner may file a response no later than seven days after Respondents' filing.

**IT IS SO ORDERED.**

                                                                                              :

                                                        **Initials of Preparer**    TJ